IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAQUEL RODRIGUEZ, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 07 C 0044 |
| JOSE BARRERA, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Raquel Rodriguez has sued Jose Barrera, asserting a number of state law tort claims and a claim under 42 U.S.C. § 1983 for an alleged violation of the Due Process Clause. Barrera has moved for partial summary judgment on two of Rodriguez's claims: her section 1983 claim (Count 5) and her intentional infliction of emotional distress claim (IIED) (Count 3). For the following reasons, the Court grants the motion with respect to Count 5 and denies the motion with respect to Count 3.

## Facts

Because Barrera has moved for summary judgment, the Court views the facts in the light most favorable to Rodriguez and draws reasonable inferences in her favor. *See, e.g., Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Rodriguez was the parent of two students attending Columbia Explorer's

1

Academy, a Chicago public school.  She had also been elected to and served as a member of Columbia's Local School Council (LSC).  During the relevant time frame, Barrera was the principal of Columbia and a member of the LSC.  Rodriguez contends that she was the victim of a course of harassing conduct by Barrera going back to 2002.  The alleged conduct stemmed from their interactions as members of the LSC and from Barrera's position as principal of the school that Rodriguez's children attended.

Rodriquez alleges that Barrera harassed her by, among other things, obstructing her efforts to perform her duties as an LSC member, withholding information regarding the school, intentionally rescheduling LSC meetings to her detriment, and insulting her on numerous occasions, including in front of other parents of Columbia students and other Columbia LSC members.  Rodriguez also claims that Barrera refused to place her two children on the same school-year track even though other parents had similar requests granted.  Barrera denies these accusations.

The dispute between Rodriguez and Barrera came to a head on April 19, 2006, when parents of Columbia students went to the school to pick up their report cards.  Elections for members of the LSC were held on the same date.  Chicago School Board regulations prohibit candidates for the LSC from distributing campaign literature within 100 feet of the entrance to the school grounds on election day.  A parent and LSC candidate informed Barrera that Rodriguez was improperly distributing campaign flyers at Columbia on April 19.  Rodriguez denies that she was distributing any campaign materials but admits that she was carrying some campaign flyers attached to a clipboard.  Barrera confronted Rodriguez about the election materials in a stairwell.  According to Rodriguez, Barrera demanded that she turn her personal belongings over

to him and, when she declined, attempted to grab the clipboard.  During the ensuing struggle for the clipboard, Barrera touched Rodriguez on her left breast with his hand and fingers.  It is undisputed that the entire verbal exchange and struggle in the stairwell lasted only two minutes.  Barrera claims that Rodriguez turned over the clipboard voluntarily and no struggle occurred.

Despite the altercation on April 19, 2006, Rodriguez was reelected to the LSC.  Another parent challenged the results of the election.  That challenge was denied, and Rodriguez retained her position on the LSC.

## Discussion

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

**1.     Due process claims (Count 5)**

To succeed on her section 1983 claim, Rodriguez must prove that Barrera "acted under color of state law to deprive her of a constitutional right."  *Wudtke v. Davel*, 128

F.3d 1057, 1062 (7th Cir. 1997). In Count 5, Rodriguez alleges that she was deprived of due process of law with respect to her right to serve on the LSC and her right to live free of the threat of intimidation and bodily harm. 3d Am. Comp. ¶ 131.

In her response brief, Barrera makes no arguments concerning her right to serve on the LSC. Accordingly, the Court considers her to have abandoned that claim. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (noting that arguments not presented in response to a summary judgment motion are waived); *Scott-Riley v. Mullins Food Prods., Inc.*, 391 F. Supp. 2d 707, 718 (N.D. Ill. 2005). Morever, even if Rodriguez had argued the point, it is undisputed that the challenge to her reelection in 2006 failed, and she retained her position on the LSC.[1]

Barrera's response to the motion focuses primarily on her right to protection of her bodily integrity. The Due Process Clause of the Fourteenth Amendment protects "bodily integrity . . . and is infringed by a serious, as distinct from a nominal or trivial, battery." *Alexander v. DeAngelo*, 329 F.3d 912, 916 (7th Cir. 2003) (citations omitted) (collecting cases). To rise to the level of a due process infraction, a defendant's actions must shock the conscience. *E.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

In this case, there was only a single physical altercation between Rodriguez and

---

[1] Rodriguez similarly fails to make any arguments with respect to threats allegedly made by other parents at Columbia who supposedly were friends and/or agents of Barrera. Even were such arguments raised, they have no evidentiary support other than Rodriguez's conclusory assertions in her own deposition that Barrera must be involved with the actions taken by other parents. Moreover, Rodriguez concedes that Barrera did not have "any personal knowledge of any threats directed toward Rodriguez." Pl.'s Resp. to Def.'s Stat. of Undisp. Material Facts ¶ 36.

4

Barrera that lasted no longer than two minutes. During the struggle for the clipboard, Barrera touched Rodriguez's breast with his hand a single time. Rodriguez has not claimed that Barrera touched her in a sexual manner. Rather, the touching occurred during a struggle in which Barrera attempted to take LSC election materials away from Rodriguez. These facts, even when viewed most favorably for Rodriguez, do not shock the conscience in the way necessary to constitute a due process - bodily integrity violation.

The cases Barrera relies on in her response brief supports this conclusion; they involved conduct of a much more serious and extreme nature. *See Haberthur v. City of Raymore*, 119 F.3d 720, 723-24 (8th Cir. 1997) (reversing dismissal; police officer in uniform fondled plaintiff after being asked not to and subsequently drove slowly past her home on multiple occasions); *McWilliams v. Fairfax County Bd. of Supervisors*, 72 F.3d 1191, 1193 (4th Cir. 1996) (reversing summary judgment on section 1983 claim; plaintiff was physically assaulted multiple times, including simulations of oral sex, exposing genitals, and placing a broomstick near plaintiff's anus), *abrogated on other grounds by Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998); *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415-16 (9th Cir. 1992) (holding plaintiff stated a claim; officer watched an unclothed woman of the opposite sex urinate in violation of state regulations and refused to leave after being requested to do so).

Cases from the Seventh Circuit also illustrate the extreme type of conscience-shocking conduct that is required to sustain a due process - bodily integrity claim. In *Alexander*, two police officers falsely told the plaintiff she was subject to a forty-year

5

sentence on cocaine charges, discouraged her from speaking with an attorney, and asked her to have oral sex for money with another police officer as part of a sting operation, which she did. *Alexander*, 329 F.3d at 914-15. The Seventh Circuit found these facts could amount to a due process violation because of the serious nature of the battery involved – the officers coerced the plaintiff into engaging in a sexual act through the use of threats and dishonesty. *Id.* at 916-17. On another occasion, the Seventh Circuit reversed dismissal of a due process claim where the plaintiff, a teacher, alleged that the principal of her school forcibly touched her sexually on repeated occasions and coerced her into sexual acts by using his official position and power. *Wudtke*, 128 F.3d at 1059, 1063-64. *See also Nagle v. McKernan*, No. 07 C 680, 2007 WL 2903179, at *1-*2 (N.D. Ill. Sept. 29, 2007) (Guzman, J.) (relying on *Wudtke* and *Alexander* to dismiss a section 1983 claim where an employee claimed that a fire department inspector gave her a suggestive note and pressed himself against her in the backroom of a business after persuading her to proceed there with him by citing an alleged regulatory violation).

     These cases reflect the type of conduct necessary to prove a due process - bodily integrity claim that is absent in this case. The single, brief instance of physical contact between Rodriguez and Barrera where Barrera tried to get control of Rodriguez's clipboard, if it occurred, reflects very poor judgment on Barrera's part. It does not, however, shock the conscience and therefore does not rise to the level of a due process violation. Accordingly, the Court grants summary judgment for Barrera on Count 5.

## 2. IIED claim (Count 3)

To recover on her IIED claim under Illinois law, Rodriguez must prove that she suffered "severe emotional distress" due to "extreme and outrageous" conduct by Barrera that he intended or knew would likely cause such damage. *E.g., McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806, 809 (1988). In his motion, Barrera challenges only one element – whether his conduct was extreme enough to support an IIED claim. Repeated instances of conduct that may not be extreme in isolation can accumulate to form the basis of an IIED action. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 274, 798 NE.2d 75, 83 (2003).

Barrera's most persuasive authority is *Owens v. Second Baptist Church of La Grange*, 163 Ill. App. 3d 442, 516 N.E.2d 712 (1987) (reversing jury verdict in favor of plaintiff on an IIED claim), in which the plaintiff alleged a course of conduct by the defendants somewhat similar to the allegations in this case. *Id.* at 449, 561 N.E.2d at 716-17. In *Owens*, however, the plaintiff was a pastor and the defendants were his employers, the church and its lay authority. *Id.* at 444, 516 N.E.2d at 714. Illinois courts are reluctant to allow IIED claims in the employer-employee context. *E.g., Vickers v. Abbott Labs.*, 308 Ill. App. 3d 393, 410, 719 N.E.2d 1101, 1115 (1999). That employment context, present in *Owens*, is absent from this case. Additionally, *Owens* is distinguishable because Barrera occupied a position of power over Rodriguez in his role as principal of the school that her children attended. *See McGrath*, 126 Ill. 2d at 86, 533 N.E.2d at 809 ("[T]he degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous.").

In this case, Rodriguez claims to have suffered numerous instances of public insult and injury at the hands of Barrera. Though several of these instances likely would not support a claim for IIED in isolation, they might when taken together. Because the parties dispute whether most of these instances of harassment occurred, genuine issues of fact preclude summary judgment on Count 3.

## Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment in part and denies it in part [docket no. 75]. The Court grants summary judgment in favor of defendant on Count 5 of the third amended complaint but otherwise denies defendant's motion. Pursuant to 28 U.S.C. § 1367(c)(3), the Court has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. Defendant has not requested that the Court decline to exercise jurisdiction in the event his motion is granted as to Count 5. Due to the time the Court has spent on this matter and the approaching trial date of November 10, 2008, the Court will retain jurisdiction in the interests of efficiency and justice. The case is set for a status hearing on September 15, 2008 at 9:30 a.m. to discuss the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 8, 2008